*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0281P (6th Cir.)
File Name: 04a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

*v.*　　　　　　　　　No. 03-1728

MARTIN SALDIVAR-TRUJILLO,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00213—Richard A. Enslen, District Judge.

Argued: July 8, 2004

Decided and Filed: August 26, 2004

Before: KRUPANSKY and GILMAN, Circuit Judges;
MAYS, District Judge.[*]

———————

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for

———————

[*] The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————

## OPINION

———————

RONALD LEE GILMAN, Circuit Judge. Martin Saldivar-Trujillo, a convicted felon who had previously been deported as an illegal alien, pled guilty to one count of again being present in the United States without authorization. His renewed presence violated 8 U.S.C. § 1326(a) and (b)(2). The prior aggravated felony occurred in Wisconsin, where Saldivar-Trujillo was convicted of possessing marijuana with the intent to deliver. After he pled guilty, but before the sentencing hearing, Saldivar-Trujillo sent four letters to the district court expressing his unhappiness with his court-appointed attorney and requesting that the court appoint new counsel.

At the sentencing hearing, the district court denied Saldivar-Trujillo's request for substitute counsel after hearing from both Saldivar-Trujillo and his defense counsel about the issue. The district court subsequently granted Saldivar-Trujillo a three-level sentence reduction for acceptance of responsibility and sentenced him to 96 months in prison followed by three years of supervised release. On appeal, Saldivar-Trujillo contends that the district court abused its discretion by denying his request for substitute counsel. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Saldivar-Trujillo pled guilty on March 18, 2003. Between that date and the date of his sentencing hearing on June 4, 2003, he sent the district court four letters regarding the performance of his court-appointed attorney. The record does not contain copies of the letters, but during the sentencing hearing the district court provided an oral summary of their contents. In his first letter to the district court, sent on April 3, 2003, Saldivar-Trujillo stated that "his counsel did not keep him informed regarding his case and forced him to plead guilty despite his lack of understanding of what he is guilty of . . . ." Saldivar-Trujillo sent the court another letter on May 5, 2003, in which he stated that "he told his lawyer and the probation officer that he was not happy with his representation and would like alternative representation" because defense counsel had walked out of a meeting with Saldivar-Trujillo and the presentence investigator.

Five days later, on May 10, 2003, Saldivar-Trujillo sent the court a third letter stating that

he attempted to tell his lawyer he wanted to object to the 16 point increase in the offense level which is indicated in Paragraph 23 of the report. Paragraph 23 provides a 16 level enhancement on the grounds that under guidelines 2L1.2(b)(1)(A)(i), the offense level has to be increased by 16 levels because he was convicted of possession with intent to deliver a controlled substance in Wisconsin[,] which is an aggravated felony, and he was deported after that in 1998.

Saldivar-Trujillo sent a fourth letter to the court on June 4, 2003, the day of the sentencing hearing. In his letter, Saldivar-Trujillo claimed that defense counsel had not explained the indictment to him and had tricked him into pleading guilty. The letter also alleged that Saldivar-Trujillo had prepared his own written objections to the Presentence Report and sent them to the investigator, but that defense

counsel had failed to attend a meeting with Saldivar-Trujillo and the investigator to discuss the objections and had failed to respond to the objections in any way. Saldivar-Trujillo further contended in the letter that he had told defense counsel several times that he was not happy with counsel's performance and wanted a substitute attorney to represent him.

The district court inquired into Saldivar-Trujillo's complaints at the sentencing hearing. First the court heard from Saldivar-Trujillo, who contested the 16-level sentence increase based on his prior aggravated felony conviction. The court then heard from defense counsel, who explained that he had walked out of the meeting with Saldivar-Trujillo and the investigator after he was informed that Saldivar-Trujillo planned to hire a private defense attorney. Counsel said that he subsequently called the investigator several times to ask whether she had heard from the private attorney (who was never in fact hired).

Saldivar-Trujillo's attorney also explained to the district court that he had met with his client in order to discuss the Presentence Report. After discussing a majority of the Report with Saldivar-Trujillo, defense counsel terminated the meeting because it "did not go well." Saldivar-Trujillo thereafter filed his own objections to the Report. Defense counsel did not respond to these objections, however, because he did not agree with them.

Defense counsel refused to provide additional information regarding his problems with Saldivar-Trujillo to the district court on the ground that their private conversations were protected by the attorney-client privilege. The district court then asked for comments by the prosecutor, who argued that Saldivar-Trujillo was not entitled to the appointment of substitute counsel.

After hearing from Saldivar-Trujillo and the attorneys for both sides, the district court denied Saldivar-Trujillo's

request. The court first explained that cases from the Sixth Circuit required it to consider "the timeliness of the defendant's motion, whether the conflict between the attorney and client was so great it resulted in a total lack of communication thereby preventing an adequate defense, and whether the accused's right to counsel of his choice outweighs the public interest in the prompt and efficient administration of justice." Applying these factors, the district court reasoned as follows:

The Court was first made aware of defendant's desire to substitute his lawyer . . . on April 3rd, two months before his sentencing. That factor weighs in favor of the defendant's request. With respect to the adequacy of the communication between defendant and his counsel, it is clear to me from defendant's letters, if nothing else, and what he said today, that there was not a total lack of communication, in his letter he references attempts to obtain information from his lawyer, he expresses dissatisfaction with the responses he got from his lawyer, not with the [lack of] opportunity or his [in]ability to talk to his lawyer or contact his lawyer.

Furthermore, I find that he willingly and knowingly entered a plea on the charges he now claims not to understand, that's clear from the transcript and from his letter to me. . . .

[He] argued that his lawyer's failure to object to certain items in the [Presentence Report] make[s] his counsel inadequate, specifically he is concerned about the 16 level increase in the offense level as a result of having been deported after a criminal conviction for an aggravated felony. As a matter of law I find defense counsel has absolutely no basis to object to that increase, and such an objection would be frivolous. According to Guidelines 2L1.2(b)(1)(A)(i), his base offense level is properly increased 16 levels.

There is nothing in the record to indicate that the defense counsel has not been an effective advocate on behalf of the defendant. Additionally[,] I happen to know defense counsel to be far more than competent as a lawyer for a person charged with a crime, and I also know he is a committed advocate if ever an advocate I've seen.

Finally[,] I have to consider whether the balance weighs in favor of the accused's right to counsel of his choice or the public's interest in the prompt and efficient administration of justice. At this stage, the stage of sentencing, [a] guilty plea has been entered, sentencing is under way, the public's interest in prompt administration of justice is great. Defendant should not be permitted to disrupt the judicial system by filing motions for substitution of counsel without good cause. In this case, the defendant is represented by more than adequate counsel. He previously appeared before me [at the guilty plea hearing] and affirmed his satisfaction with counsel, and that is apparent in the transcript[,] and willingly entered a plea. I am concerned that his motion is an attempt to delay his sentence and not a legitimate motion for substitute counsel. In any event, he has failed to show good cause for me to substitute counsel, and I find the public interest[] in the prompt and efficient administration of justice outweighs his right to counsel of his choice. Therefore, his letter motions and his oral motion to substitute counsel is denied.

In addition to discussing his representation of Saldivar-Trujillo, defense counsel argued at the sentencing hearing that the district court should reduce his client's sentence for acceptance of responsibility. The prosecutor agreed that a three-level reduction was appropriate, and the court accordingly reduced Saldivar-Trujillo's offense level by that amount.

## II. ANALYSIS

### A. Standard of review

"An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). We will reverse a district court's decision regarding an indigent defendant's motion for substitute counsel only if the district court has abused its discretion. *Id.* at 1130 n.8. In order to decide whether a district court has abused its discretion, we must consider

the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. . . . Further, [c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*Id.* (citations and quotation marks omitted).

### B. The district court did not abuse its discretion by denying Saldivar-Trujillo's motion for substitute counsel

Saldivar-Trujillo's request for substitute counsel was timely because he wrote his first letter to the judge a full two months before the sentencing hearing. But all of the other *Iles* factors weigh against the granting of his request. The district court properly concluded "that there was not a total lack of communication" because "in his letter he references attempts to obtain information from his lawyer, he expresses dissatisfaction with the responses he got from his lawyer, not with the [lack of] opportunity or his [in]ability to talk to his lawyer or contact his lawyer."

Granting Saldivar-Trujillo's request for substitute counsel, moreover, would actually have impeded the efficient administration of justice because his complaints about his attorney's performance were frivolous. Saldivar-Trujillo's essential grievance was that his attorney would not object to the 16-level enhancement based upon his prior aggravated felony conviction. As the government points out in its brief, however,

Defendant's complaint stemmed from an apparent misunderstanding of the law. The Defendant misconstrued the legal significance of his prior drug conviction and removal. The district court properly held that it was not necessary for the conviction to state "aggravated" and it was not necessary for the removal to be as a result of his conviction.

Any objection by defense counsel to this 16-level increase would therefore have been frivolous, and the district court properly refused Saldivar-Trujillo's request to appoint substitute counsel who would make such an argument. As for Saldivar-Trujillo's allegation that defense counsel had not explained the indictment to him and had tricked him into pleading guilty, the district court correctly concluded that the transcript of the guilty plea hearing demonstrated that Saldivar-Trujillo fully understood the elements of the offense.

The only potential harm to Saldivar-Trujillo's interests occurred when defense counsel walked out of the meeting with the presentence investigator. Because the attorney left, the investigator was unable to determine whether Saldivar-Trujillo had accepted responsibility for his actions, thereby entitling him to a sentence reduction. But defense counsel remedied this potential harm to Saldivar-Trujillo by successfully arguing at the sentencing hearing for the three-level reduction. Defense counsel's actions at the meeting therefore did not constitute good cause for the district court to grant Saldivar-Trujillo substitute counsel.

The only *Iles* factor that the district court did not consider, because it was not in a position to do so, is "the adequacy of the court's inquiry into the defendant's complaint . . . ." 906 F.2d at 1130 n.8. This is for us to decide. Our review of the sentencing hearing shows that the district court summarized the contents of Saldivar-Trujillo's letters and allowed Saldivar-Trujillo, his defense counsel, and the prosecutor the opportunity to address the complaint at issue. We conclude that this inquiry was adequate because it allowed all of the interested parties to present their respective evidence and arguments.

The district court correctly determined "that there was not a total lack of communication" between Saldivar-Trujillo and his attorney, that Saldivar-Trujillo was not prejudiced in any way by his attorney's performance, and that Saldivar-Trujillo's right to the counsel of his choice was outweighed by the public interest in the prompt and efficient administration of justice. Because Saldivar-Trujillo did not demonstrate good cause to warrant the substitution of counsel, the district court's denial of his request was not an abuse of discretion.

**C.  Legality of the sentence under *Blakely v. Washington***

Saldivar-Trujillo's final contention is that his sentence should be vacated pursuant to *Blakely v. Washington*, __ U.S. __, 124 S. Ct. 2351 (2004), where the Supreme Court struck down a Washington-state sentencing proceeding in which the judge imposed punishment that the jury's verdict alone did not allow. But even if we were to assume for the sake of argument that *Blakely* applies to cases involving the United States Sentencing Guidelines (an issue very much in dispute at the present time), the Supreme Court's decision would not require us to vacate Saldivar-Trujillo's sentence. The *Blakely* Court explained that a sentence may be imposed by a judge if it is based solely on the "*facts reflected in the jury verdict or admitted by the defendant*." __ U.S. at __, 124 S.Ct. at 2537 (emphasis in original). The sentence in the present case was

based solely upon the facts admitted by Saldivar-Trujillo as part of his guilty plea. *Blakely* therefore does not affect the validity of his sentence. *See United States v. Lucca*, No. 03-2859, 2004 WL 1698784, at *6 (8th Cir. July 30, 2004) (holding that *Blakely* was not implicated where the defendant was sentenced based solely upon the facts admitted as part of his guilty plea).

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.