CONCURRING IN PART AND DISSENTING IN PART
KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
What more could Earnest Proge or Carlos Powell have done? At their Final Pretrial Conference on March 26, 2014, both men raised serious concerns with their legal representation. Proge moved to substitute his retained counsel. Powell moved to *783 represent himself. With their trial for orchestrating one of the largest drug-trafficking conspiracies in the history of Detroit weeks away, both men sought to avail themselves of fundamental protections that the Sixth Amendment enshrines: for Proge, the right to counsel of choice; for Powell, the right to self-representation.
The facts of what followed are sobering. The government urged the district court to grant Powell’s Faretta motion and Proge’s motion to substitute counsel. The district court declined. It forced Proge to proceed with an attorney who, by her own repeated admissions, had not prepared for trial. It refused to allow Powell to represent himself, even though Powell knowingly and voluntarily waived his right to counsel.
Those were structural errors. The district court erred when it refused to allow Proge to substitute his retained counsel. And it erred when it denied Powell’s Far-etta motion. I agree with the majority in vacating Proge’s conviction and provide more detail supporting that decision. Because I believe that Carlos Powell should have been permitted to represent himself, I respectfully dissent from Part III of the majority.
I. RIGHT TO COUNSEL OF CHOICE
“The right to select counsel of one’s choice ... has been regarded as the root meaning of the constitutional guarantee” that the Sixth Amendment embodies. United States v. Gonzalez-Lopez, 548 U.S. 140, 147-48, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). “Given the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust ... the [Supreme] Court has held that the Sixth Amendment grants a defendant ‘a fair opportunity to secure counsel of his own choice.’ ” Luis v. United States, — U.S. -, 136 S.Ct. 1083, 1089, 194 L.Ed.2d 256 (2016) (quoting Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). The district court denied Proge this opportunity when it forced him to proceed to trial with an attorney who was unprepared to defend her client. Because that was a structural error, Gonzalez-Lopez, 548 U.S. at 152, 126 S.Ct. 2557, I agree with the majority that we must vacate Proge’s conviction.
We weigh four factors when reviewing a district court’s denial of a defendant’s motion to substitute counsel: (1) “the timeliness of the motion”; (2) “the adequacy of the court’s inquiry into the defendant’s complaint”; (3) “whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense”; and (4) the balance between “the accused’s right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.” United States v. Mooneyham, 473 F.3d 280, 291 (6th Cir. 2007) (quoting United States v. Saldivar-Trujillo, 380 F.3d 274, 277 (6th Cir. 2004)). Here, all four factors militate in favor of granting Proge’s motion, and the district court abused its discretion when it ruled otherwise.
1. Timeliness: Proge’s request to substitute counsel was timely because — as the government wrote in its brief recommending that the district court grant that request — Proge raised this issue one day after his relationship with his attorneys deteriorated completely. R. 268 (4/17/14 Gov’t Supp. Br. at 3-4) (Page ID #2055-56).
In their motion to withdraw, Proge’s attorneys — Patricia Maceroni and Linda Bernard — explained that on March 25, 2014, they met with Proge to review a Rule 11 plea agreement. R. 258 (4/3/14 Mot. to Withdraw at 4) (Page ID #1995). *784 The next day, at the March 26 Pretrial Conference, Bernard explained to the district court that Proge wanted to reject the plea agreement and proceed to trial. R. 490 (Final Pretrial Conference Tr. at 29) (Page ID #4205). Neither Bernard nor Maceroni, however, was prepared to assist Proge in that effort: their representation had been limited to negotiating a plea agreement and filing pretrial motions. R. 587 (4/16/14 Hr’g Tr. at 41) (Page ID #9143). Accordingly, Proge’s attorneys “did not obviously prepare for trial.” Id. at 44 (Page ID #9146). Proge’s rejection of the plea agreement thus triggered “a complete breakdown in the attorney-client relationship such that [his attorneys could] no longer be effective advocates for Mr. Proge.” R. 258 (4/13/14 Mot. to Withdraw at 4) (Page ID #1995). One day after that complete breakdown, Proge, understandably concerned that his attorneys “didn’t want to represent [him] in trial,” R. 587 (4/15/14 Hr’g Tr. at 51) (Page ID #9153), informed the district court that he wished to seek new counsel.
The district court reasoned that Proge’s request was not timely because “[t]he first indication that he was dissatisfied with his attorneys arose right before the final pretrial conference, and [his attorneys’ motion to withdraw] was ultimately not filed until less than three weeks before the trial.” R. 282 (4/22/14 Order at 4) (Page ID #2147). I fail to see how Proge could have moved to substitute counsel sooner. He implored the district court to allow him to hire a new attorney within one day of learning that his attorneys were not ready to continue representing him. That was a timely request.
2. Adequacy of court’s inquiry: “Once a defendant” informs the district court that he wishes to substitute retained counsel, “the district court is obligated to inquire into the defendant’s complaint and determine whether there is good cause for the substitution.” Benitez v. United States, 521 F.3d 625, 632 (6th Cir. 2008). “[W]here a district court is on notice of a criminal defendant’s dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction — regardless of whether the attorney is court-appointed or privately retained.” Id. at 634. The district court failed to fulfill that duty here.
At the Final Pretrial Conference, Bernard informed the district court that she and Maceroni would be filing a motion to withdraw from representing Proge. R. 490 (Final Pretrial Conference Tr. at 27) (Page ID #4203). The district court responded: “I’ll tell you right now, you may not have those motions granted I hate to tell you, okay?” Id. The district court’s unwillingness to allow Maceroni and Bernard to withdraw became clearer during its subsequent colloquy with Proge. After hearing from Bernard, the district court asked Proge a few questions about why he wanted to reject his plea agreement, but did not ask any substantive questions about Proge’s dissatisfaction with his attorneys. Id. at 32-34 (Page ID #4208-10).
It was not until three weeks later — at a hearing on April 16 — that the district court actually asked Proge why he had moved to substitute counsel. First, however, the district court telegraphed its thoughts on the matter: “I think this is a ploy. I think he’s trying to delay the trial. I think he’s trying to interfere with the administration of justice.” R. 587 (4/16/14 Hr’g Tr. at 49) (Page ID #9151). By the time Proge revealed his complete dissatisfaction with his attorneys — “I don’t want attorneys that don’t want me.... I don’t feel that I would get proper representation from them.” — it was clear that the district court had already made up its mind. Id. at 52 (Page ID #9154). Put simply, the district court pred *785 icated its inquiry on the background assumption that Proge was trying to disrupt his trial. That inquiry was thus inadequate.
3. Conflict between attorney and client: This factor alone should have impelled the district court to grant Proge’s request to substitute counsel.
Consider how Bernard and Maceroni characterized their relationship with Proge in their motion to -withdraw: “Both Ms. Bernard and Ms. Maceroni affirmatively state that there has been a complete breakdown in the attorney-client relationship such that they can no longer be effective advocates for Mr. Proge.” R. 258 (4/3/14 Mot. to Withdraw at 4) (Page ID #1995). They repeated this claim in a supplement to that motion: “[T]here has been an irreconcilable breakdown in the attorney-client relationship. Both attorneys believe, as officers of the Court, that they cannot be effective counsel for Mr. Proge.” R. 267 (Supp. to Defense Counsels’ Mot. to Withdraw at 1-2) (Page ID #2050-51).
The district court nonetheless rejected Bernard’s and Maceroni’s motion to withdraw. R. 282 (4/22/14 Order at 9) (Page ID #2152). Curiously, the district court characterized that motion as “Earnest Proge’s motion for withdrawal of attorneys.” Id. (emphasis added). Not so: it was Proge’s attorneys who were pleading with the district court to release them from representing Proge.
Proge’s attorneys were not finished. Ma-ceroni filed a motion for reconsideration, arguing that her continued representation of Proge would force her to violate multiple Michigan Rules of Professional Conduct. R. 284 (Maceroni Mot. for Recons, at 1-2) (Page ID #2159-60). Maceroni added: “[I]n forcing Counsel to continue representing Mr. Proge through trial, Counsel cannot meet her responsibilities under the Michigan Rules of Professional Conduct. The ramifications to Counsel’s professional standing will be damaging and long lasting.” Id. at 3 (Page ID #2161).
Bernard echoed Maceroni’s concerns in a separate motion for reconsideration, writing that she “would not like [her] professional standing in the legal community to be compromised as a result of the ineffective and inefficient handling of this matter.” R. 288 (Bernard Mot. for Recons, at 3) (Page ID #2207). Bernard had even more serious concerns. She informed the district court that she had “never handled a criminal jury trial or bench trial in federal court.” Id. at 2 (Page ID #2206). And she revealed that she had “limited knowledge of the [Federal Rules of Evidence] and the [Federal Rules of Criminal Procedure].” Id.
Presented with a broken attorney-client relationship, the district court allowed Bernard to withdraw — but ordered Maceroni to continue representing Proge. R. 302 (4/28/14 Order at 7) (Page ID #2406). Proge was thus forced to enter the trial of his life with an attorney who believed adamantly that her professional relationship with him was damaged beyond repair.
4. Interests of Justice: This final prong requires us to “consider both [Proge’s] rights and the rights of the public.” Cobb v. Warden, Chillicothe Corr. Inst., 466 Fed.Appx. 456, 463 (6th Cir. 2012). Plainly, the district court’s denial of Maceroni’s motion' to withdraw prejudiced — grievously— Proge’s right to be represented by an attorney of his choosing. I In an effort to counterbalance this constitutional violation, the district court reasoned that ¿flowing Maceroni to withdraw would have “seriously prejudiee[d] the administration of justice and the government’s limited public resources.” R. 302 (4/28/14 Order at 7) (Page ID #2406).
The government saw things differently. In its April 17 supplemental brief, the *786 government wrote that although allowing Proge to substitute his counsel would impair the government’s interest “in moving [Proge’s] case to completion,” the district court should nonetheless allow Proge’s attorneys to withdraw “and require [Proge] to immediately find new counsel.” R. 268 (4/17/14 Gov’t Supp. Br. at 6-7) (Page ID#2058-59). The government repeated this recommendation in its April 28 response submission, where it wrote that “the government continues to believe that the most cautious approach would be to allow counsel to withdraw from the case.” R. 298 (4/18/14 Gov’t Resp. at 1) (Page ID #2370). The government’s repeated request that the district court grant Proge’s motion to substitute counsel undercuts the district court’s conclusion that the public interest would have been best served by denying that motion.
[[Image here]]
“[E]rroneous deprivation of the right to counsel of choice [carries] ‘consequences that are necessarily unquantifiable and indeterminate ....’” Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. 2557 (quoting Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Here, however, at least some of the consequences of the district court’s error are crystalline. In late April 2014, Proge went to trial represented by an attorney who had told him, and the district court, that she was unprepared to defend Proge. He was prosecuted by an Assistant United States Attorney who twice implored the district court to allow Proge to change attorneys. And he was tried by a district judge who responded to Proge’s plaintive requests to substitute counsel by declaring his belief that Proge was trying to game the system.
The district court’s denial of Proge’s request to substitute counsel vitiated a core protection of the Sixth Amendment. That was an abuse of discretion, and I thus join the majority in vacating Proge’s conviction.
II. RIGHT TO SELF-REPRESENTATION
“The right to appear pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused’s best possible defense.” McKaskle v. Wiggins, 465 U.S. 168, 176-77, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). “[D]enial of the Faretta right is a structural error for which [a defendant] need not show any prejudice.” Washington v. Renico, 455 F.3d 722, 734 (6th Cir. 2006). Just so here. Powell validly waived his right to counsel. The district court nonetheless refused to allow Powell to represent himself: it first denied Powell’s Faretta motion after applying the wrong legal standard, then refused to reconsider that denial when the government argued that the district court had erred. Because the district court should have granted Powell’s motion to proceed pro se, I would vacate Powell’s conviction.
At the outset, I note that our “jurisprudence concerning the standard of review applicable to claims asserting violations of the right to self-representation is confused.” United States v. Evans, 559 Fed.Appx. 475, 478 (6th Cir. 2014); compare United States v. Jones, 489 F.3d 243, 247 (6th Cir. 2007) (de novo) with United States v. Bowker, 372 F.3d 365, 385 (6th Cir. 2004) (abuse of discretion), vacated on other grounds by Bowker v. United States, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005). This question remains open in our circuit. See United States v. Williams, 641 F.3d 758, 766 (6th Cir. 2011). Even if we were to review for an abuse of discretion the district court’s denial of Powell’s Faretta motion, as the government recommends, I would still reverse.
*787 Faretta set an important limitation on the right to self-representation: “[I]n order to represent himself, the accused must knowingly and intelligently forgo” his Sixth Amendment right to counsel. United States v. Bankston, 820 F.3d 215, 223 (6th Cir. 2016) (quoting Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)); see also Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (“[T]he right to self-representation is not absolute. The defendant must voluntarily and intelligently elect to conduct his own defense.... ” (internal quotation marks and citations omitted)). To this end, “[w]hen an accused wishes to represent himself, the district court must ask the defendant a series of questions drawn from, or substantially similar to, the model inquiry set forth in the Bench Book for United States District Judges.” United States v. Ross, 703 F.3d 856, 867 (6th Cir. 2012) (internal quotation marks omitted).
The purpose of this inquiry is not to determine whether a defendant will represent himself as well as an attorney would. Rather, it is to ensure that the defendant is “aware of the dangers and disadvantages of self-representation, so that the record will establish that” his waiver of the right to counsel is knowing and voluntary. Faretta, 422 U.S. at 835, 95 S.Ct. 2525. Accordingly, “the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.” Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).
The district court failed to appreciate this distinction. Powell knowingly and intelligently waived his right to counsel. At the Final Pretrial Conference, Powell’s attorney informed the district court that Powell wished to proceed pro se. R. 490 (Final Pretrial Conference Tr. at 23) (Page ID #4199). The district court held a hearing on Powell’s Faretta motion two weeks later, on April 10, 2014. R. 287 (4/10/14 Hr’g Tr.) (Page ID #2174). At that hearing, the district court first informed Powell that in no event would it grant a continuance of Powell’s scheduled trial date; Powell said that he understood. Id. at 6-7 (Page ID #2179-80). Powell explained that he wished to represent himself so that he could file documents related to the teachings of the Moorish Science Temple — documents, Powell explained, that his retained attorney was not willing to file. Id. at 7-8 (Page ID #2180-81). The district court told Powell that he could be sentenced to life in prison if he were convicted; again, Powell said that he understood. Id. at 8-9 (Page ID #2181-82). The district court then asked Powell a series of questions patterned after the Bench Book-, Powell answered each one by acknowledging that he appreciated fully the court’s admonitions about the perils of representing himself at trial. Id. at 9-14 (Page ID #2182-87). And when the district court asked Powell if he was voluntarily invoking his Faretta right, Powell responded that he was. Id. at 15 (Page ID #2188).
Despite Powell’s knowing and voluntary waiver of his right to counsel, the district court denied Powell’s request, relying on our decisions in United States v. Sullivan, 431 F.3d 976 (6th Cir. 2005), and United States v. Trujillo, 376 F.3d 593 (6th Cir. 2004). Id. at 17-19 (Page ID #2190-92). That was an error: Sullivan and Trujillo concern the right to counsel of choice, not the right to self-representation. Sullivan, 431 F.3d at 979; Trujillo, 376 F.3d at 606. The government noted this mistake in its motion for reconsideration. R. 263 (4/16/14 Gov’t Mot. for Recons, at 4-5) (Page ID #2006-07). Moreover, the government wrote that Powell’s Faretta motion argu *788 ably “satisfied the conditions for self-representation,” and it implored the district court to reconsider its denial of that motion. Id. at 3, 5-6 (Page ID #2005, 2007-OS).
The district court held firm. In an order dated April 23, 2014, the district court justified its denial of Powell’s Faretta motion largely on the strength of Powell’s attorney: “Powell ha[d] been ably represented by [his attorney] for over two years,” the district court wrote, and the genesis of Powell’s request for self-representation was not his attorney’s incompetence but rather Powell’s desire to “file additional frivolous documents related to the Moorish Science Temple.” R. 286 (4/23/14 Order at 5) (Page ID #2171). Powell, the district court reasoned, was simply trying to delay his trial. Id. at 6 (Page ID #2172).
The district court, in other words, did just what Faretta and its progeny forbid. The district court reasoned that Powell would probably stand a better chance of prevailing at trial if he were represented by counsel. And the district court reasoned that the documents Powell wished to file were, from a legal standpoint, frivolous. It then denied Powell’s Faretta motion because it determined that the motion must have been a ruse. Thus, although Powell demonstrated that he was competent to waive his right to counsel, the district court erroneously denied that right on the assumption that Powell would do a poor job representing himself. Cf. Godinez, 509 U.S. at 399, 113 S.Ct. 2680.
Faretta makes plain that a defendant may waive his right to counsel irrespective of “his technical legal knowledge” or “how well or poorly [the defendant] has mastered the intricacies of’ trial procedure. Faretta, 422 U.S. at 836, 95 S.Ct. 2525. Faretta thus teaches that although a defendant “may conduct his own defense ultimately to his own detriment, his choice must be honored out of ‘that respect for the individual which is the lifeblood of the law.’ ” Id. at 834, 95 S.Ct. 2525 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)). That respect was absent from the district court’s denial of Powell’s request for self-representation.
Powell’s waiver of his right to counsel was both knowing and voluntary. The district court erred by refusing to honor that waiver. And the majority errs in affirming the district court. I would vacate Powell’s conviction on the basis of the district court’s violation of Faretta.